IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALFRED R. TORONKA, } | |
| } | |
| *Plaintiff*, } | |
| v. } | Civil Action No. H-08-2582 |
| } | |
| CONTINENTAL AIRLINES, INC., } | |
| } | |
| *Defendant*. } | |

**OPINION AND ORDER**

Presently before the Court is Defendant Continental Airlines, Inc.'s (Continental) amended motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10). Upon review and consideration of this document, the response thereto, and the relevant legal authority, the Court finds that this motion should be granted-in-part and denied-in-part.

I.    Background and Relevant Facts

On August 25, 2008, Plaintiff Alfred R. Toronka (Toronka) initiated suit against his employer, Defendant Continental. (Pl.'s Compl., Doc. 1). On October 21, 2008, Toronka filed an amended complaint asserting causes of action for (1) race, color, and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981 (section 1981); (2) religious discrimination in violation of Title VII and section 1981; (3) disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*.; and (4) intentional infliction of emotional distress in violation of Texas state law. (Pl.'s Am. Compl., Doc. 9).[1]

---

[1] In his amended complaint, Plaintiff asserts a duplicative claim for discrimination. (*See id.* at ¶¶ 19-20). Defendant has moved to dismiss this claim. The Court has construed the amended complaint as asserting the above four causes of action. It will incorporate the allegations from Plaintiff's duplicative claim into claim (1).

On October 12, 2007, Toronka, a material specialist for Continental, was involved in an on-the-job accident while driving a Continental vehicle. (*Id.* at ¶ 7). At the time of the accident, Plaintiff allegedly explained to his employer that he could not control the vehicle despite "matching" the brakes and that he believed the accident was inevitable because of a dream that his wife had about him earlier that day.[2] (*Id.* at ¶ 14). In accordance with Continental's policies and procedures for on-the-job accidents, Toronka was drug tested and suspended for three days pending receipt of the drug test results. (*Id.* at ¶¶ 7-8). The drug test results came back negative. (*Id.* at ¶ 8).

Toronka contends that similarly situated employees who are involved in an on-the-job accident and who have passed a mandatory drug test, are allowed to return to work. (*Id.* at ¶ 14). Instead, Toronka claims he was suspended without pay and referred to Continental's Employee Assistance Program (EAP) from November 6, 2007, until January 14, 2008. (*Id.* at ¶ 8). As a condition of his continued employment, Toronka had to sign an undated letter of resignation which would be used for his termination if he failed to comply with EAP requirements. (*Id.*). Toronka completed EAP but was then referred to a "twelve (12) step program" that required him to undergo psychiatric evaluations. (*Id.* at ¶ 9).

Toronka alleges that Continental required him to undergo these psychiatric tests "because of his religious and traditional beliefs in the power of dreams being of African decent and of the Seventh-[D]ay Adventist religious sect." (*Id.*). These tests concluded that Toronka was suffering from "[c]ognitive [d]eficits secondary to an organic [b]rain [s]yndrome." (*Id.* at ¶ 10). Toronka claims that these mental deficits rise to the level of a mental disability. (*Id.*).

---

[2] The Court is unaware of what "matching" the brakes is. In looking at the context in which this word is used, the Court assumes it means smashing or slamming on the brakes in an effort to stop the vehicle.

Toronka maintains that after he completed the required tests, the terms and conditions of his employment were different from those of similarly situated employees.  (*Id.*). Moreover, he claims that Continental failed to accommodate his disability but that they accommodated other employees' disabilities.  (*Id.*).  As a result, Toronka claims that he is suffering from severe mental distress and pain and is unsure whether he has a job with Continental.  (*Id.*).

On October 31, 2008, pursuant to Fed. R. Civ. P. 12(b)(6), Continental moved to dismiss the following: the religious discrimination claim, the duplicative race, color, national origin and religious discrimination claims,[3] and the intentional infliction of emotional distress claim. (Doc. 10).

II.        Legal Standard on Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).  A plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face.  *Id.* at 1974.  A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 127 S. Ct. at 1965).  But, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

---

[3] *See* footnote 1.

to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 127 S. Ct. at 1966) (internal quotations omitted).

However, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Therefore, the complaint must be liberally construed in favor of the plaintiff, all reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

III.    Discussion

    A.    Religious Discrimination Claims

Toronka contends that after his accident he explained to his employer that he could not control the vehicle despite "matching" the brakes and that he believed the accident was inevitable because of a dream that his wife had about him earlier that day.[4] (Pl.'s Am. Compl., Doc. 9 at ¶ 14). Toronka argues that, because of his religious belief in the power of dreams, Continental, contrary to company practice in similar situations, subjected him to harsh employment conditions in violation of Title VII and Section 1981. However, Continental contends that a belief in the power of dreams is not a bona fide religious belief. Moreover,

---

[4] As the Court noted above, it is unaware of what "matching" the brakes is but will assume it means smashing or slamming on the brakes in an effort to stop the vehicle.

Continental argues that it was unaware of Toronka's religious beliefs, and, thus, it was impossible for Continental to subject Toronka to harsh employment conditions on account of his religious beliefs.

It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Courts, in considering motions to dismiss discrimination claims, typically look to the elements of a *prima facie* case to determine whether the plaintiff has plead a valid claim for relief.  *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008).  The analysis is the same for discrimination claims under Title VII and Section 1981.  *See*, *e.g.*, *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n. 7 (5th Cir. 1994) (citations omitted).  To establish a *prima facie* claim for religious discrimination against an employer a plaintiff must prove: (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) the employee was discharged or disciplined for failing to comply with the conflicting employment requirement.  *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

Initially, the Court must determine whether Toronka's "moral and ethical belief in the power of dreams based on his religious convictions and traditions of his national origin of African descent" is a religious belief.  In *United States v. Seeger*, 85 S. Ct. 850 (1965), a case involving a conscientious objector to military service, the Supreme Court noted the "vast panoply of beliefs" present in this country and interpreted the meaning of religious training and beliefs so as to "embrace all religions."  *Seeger*, 85 S. Ct. at 165, 175.  The Equal Employment

Opportunity Commission (EEOC) guidelines are similarly broad: "The Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1. The Fifth Circuit has held that the analysis for the religious nature of a belief does not turn on the veracity of a belief. *See Brown v. Resor*, 407 F.2d 281, 288 (5th Cir. 1969). Rather, the focus should be whether a belief, in the person's own scheme of things, is religious. *Theriault v. Carlson*, 495 F.2d 390, 394 (5th Cir. 1974). A religious belief is one which is based on a theory of "man's nature or his place in the Universe." *Brown v. Dade Christian Schools, Inc.*, 556 F.2d 310, 324 (5th Cir. 1977) (Roney, J., dissenting). "All forms and aspects of religion, however eccentric, are protected except those that cannot be, in practice and with [honest effort], reconciled with a businesslike operation." *Cooper v. General Dynamics,* 533 F.2d 163, 168-69 (5th Cir. 1976). Thus, sincerely held personal convictions, which others find nonsensical, may still fit within the framework of a religious belief. There is, however, a rational limit to what courts are willing to accept as religious beliefs. *See, e.g., Brown v Pena*, 441 F. Supp. 1382, 1385 (S.D. Fla. 1977) (holding plaintiff's "personal religious creed" of eating Kozy Kitten cat food was a personal preference and not a religious belief).

The complaint links Toronka's belief in the power of dreams to the traditional religious convictions of his African origin. Toronka contends that his belief in dreams is "a moral and ethical belief . . . based on his religious convictions and traditions " (Pl.'s Am. Compl., Doc. 9 at ¶ 14). Although Continental asserts that Toronka never informed it of his belief in the power of dreams, Toronka's complaint alleges that he communicated his beliefs to Continental at the time of the accident and that the subsequent disciplinary actions that followed were on account of his religious beliefs. In construing all reasonable inferences in Plaintiff's

favor and accepting all factual allegations pleaded as true, the Court finds that Toronka has asserted a claim for religious discrimination that is "plausible" on its face. Thus, the Court declines to dismiss Plaintiff's religious discrimination claims under Fed. R. Civ. P. 12(b)(6).

### B. Intentional Infliction of Emotional Distress Claim

Toronka asserts a claim for intentional infliction of emotional distress because "[t]he placing of the plaintiff with EAP a program designed for employees with substance or alcohol abuse has made the [plaintiff] suffer emotional distress and humiliation . . . these issues have caused [the plaintiff] sleepless nights." (Pl.'s Am. Compl., Doc. 9 at ¶ 21).

In *Stanford Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), the Texas Supreme Court recognized the intentional infliction of emotional distress as a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (citing *Standard Fruit*, 985 S.W.2d at 68). "Intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

Accordingly, the Court finds that Toronka may not assert an intentional infliction of emotional distress claim as it is based on the same underlying conduct as his claims for race, color, national origin, religious, and disability discrimination. Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), the Court must dismiss with prejudice Toronka's intentional infliction of emotional distress claim.

IV.        Conclusion

Accordingly, the Court hereby ORDERS that Defendant Continental's amended motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10) is GRANTED-IN-PART and DENIED-IN-PART.  The Court further ORDERS that Plaintiff Toronka's claim for intentional infliction of emotional distress is DISMISSED with prejudice.

SIGNED at Houston, Texas, this 3rd day of August, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE